[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ORDER REGARDING MOTION TO OPEN (#316) AND ADDENDUM TO MOTION TO OPEN (FILED MAY 26, 1999)
On April 16, 1999, the defendant Dennis Guaglianone filed a motion to open, vacate and set aside. This motion was substituted by an "Addendum to Motion to Open, Vacate, and Set Aside" filed on May 6, 1999. This motion to open requested the court to reconsider its March 29, 1999 order granting plaintiff's Post-Judgment Motion For Modification of Visitation (#295) allowing the plaintiff, Lisa Barbieri, to relocate with the parties' children to Virginia. The defendant's motion to reopen was scheduled for a hearing on May 17, 1999, at which time the movant appeared late, and the motion was thus continued until July 6, 1999. For the reasons stated on the record on July 6, 1999, the motion to open, vacate, and set aside the court's March 29, 1999 ruling on the motion for modification of visitation is denied.
The father shall continue to have telephone contact with the children pursuant to the court's written order dated April 1, 1999. A copy of the court's April 1, 1999 order is attached. The court orders summer visitation as follows. The father's summer visitation shall begin on August 8, 1999, between 5:00 p.m. and 6:00 p.m. The mother shall drop the children off at the father's residence. This visitation shall end on August 22, 1999. The father shall be responsible for returning the children to the mother's custody at the end of visitation. The father shall inform the mother about the manner and/or time of the children's return at least one week in advance.
The case is continued to August 9, 1999 at 10:00 a.m. for the entry of further visitation orders and consideration of pending motions (plaintiff's motion for fees (#319) and the defendant's motion for contempt (dated June 25, 1999).
This ruling denying the defendant's motion to vacate represents the final decision regarding the plaintiffs Post-Judgment Motion For Modification of Visitation (#295) for purposes of appeal. In light of the manner in which these matters have been scheduled and continued, and in order to avoid injustice, the court holds and the parties are notified that the appeal period on the court's order granting the plaintiffs CT Page 8942 Post-Judgment Motion For Modification of Visitation shall commence from the date hereof or July 8, 1999.
So ordered.
This day of July 8, 1999
Stevens, J.
 ORDER
Interim Orders of visitation with minor children.
The case shall be continued for monitoring on May 17, 1999.
The Defendant Father shall have visitation on Thurs., April 1, 1999 from 6:30 p.m.-2:00 p.m. on Sunday, April 4, 1999.
The court enters the following orders that shall be in effect from April, 1999-May 17, 1999:
Re: Weekday telephone communication 7:00 p.m.-8:00 p.m. M. W. F.
If the children are not available to receive the phone calls from the Father, the Mother shall insure the children call Mon. or Wed. or Fri. and speak with their Father before they go to bed.
Re: Weekend telephone communication 7:00-8:00 p.m. Sunday
If telephone communication does not occur between 7:00-8:00 p.m. for whatever reason, the Mother is obligated to have the children call the Father on that evening.
Lisa Barbieri's phone # (Virginia) Dennis Guaglianone's phone # (703) 818-8175 (203) 534-0372-Beeper (203) 378-7146 (not a home phone #) Lisa Barbieri's address: 12505 Loston Circle Apt #201 Fairfax, VA 22033
The Court orders Mr. Guaglianone to provide Ms. Barbieri with his home phone # as soon as one is obtained. CT Page 8943
By the Court (Stevens, J.)
Temporary Assistant Clerk
 QUALIFIED DOMESTIC RELATIONS ORDER
This order is an integral part of the Decree of Divorce signed on March 10, 1999. This order is intended to be a "qualified domestic relations order" ("QDRO") in compliance with29 U.S.C. § 1056(d) (section 206(d) of the Employee Retirement Income Security Act ("ERISA")) and section 414(p) of the Internal Revenue Code.
Assignment of Benefits
This QDRO assigns a portion of the benefits payable with respect to Irving S. Schloss ("Participant") under the TylerCooper Alcorn, LLP Target Benefit Retirement Plan for Partnersand Employees (the "Target Benefit Plan") and the Tyler Cooper Alcorn, LLP Retirement Savings Plan (the "Savings Plan") as sponsored or adopted by Tyler Cooper Alcorn, LLP (the "Firm") (the Target Benefit Plan and the Savings Plan together are referred to as the "Plans" and the term Plan shall refer to either the Target Benefit Plan or the Savings Plan as indicated by the context) to Christine S. Schloss ("Alternate Payee") in recognition of the existence of Alternate Payee's marital rights in Participant's benefits payable under the Plan.
Participant Information
Participant's last known mailing address is 297 Blake Circle,Hamden/CT 08317. Participant's date of birth is 2/3/45 and his Social Security number is 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.
Alternate Payee Information
Alternate Payee's mailing address is 248 Sam Hill Road,Guilford/CT 06437. Alternate Payee's date of birth is 4/28/47 and her Social Security number 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.
Division of Benefits
As a part of a just and right division of the estate of the parties, the Court awards, assigns, and grants to Alternate Payee a 50% share of Participant's vested accrued account balance in CT Page 8944 each of the the Plans, determined as of March 10, 1999 (plus earnings attributable thereto from that date to the date of separate allocation into an Account for the benefit of Alternate Payee), which amount shall be separately accounted for. Alternate Payee's share of the Participant's account(s) shall be taken [equally] from [all of] Participant's [________________] account(s) under the Plans. To the extent Alternate Payee is permitted to do so by each of the the Plans, Alternate Payee may, after allocation to such separate account, direct investments of Alternate Payee's portion of the accounts in each of the Plans
and exercise voting rights with respect to securities in that portion of the accounts in each of the Plans. To the extent Alternate Payee is not permitted to direct investments of Alternate Payee's portion of the accounts in either or both of the Plans, Alternate Payee's portion of the accounts in suchPlan shall be invested as provided by the Plan or, in the absence of a provision, by the Plan Fiduciary responsible for investment decisions.
When Benefits Begin
Alternate Payee shall have the right to elect to begin receiving benefits or withdrawing funds from the Plans at any time Participant could begin to receive benefits or, if earlier, at the earliest of the following dates:
 1. the date on which Participant becomes eligible to withdraw similarly situated funds from the Plan without regard to hardship; or
 2. the date on which Participant could begin receiving benefits under the Plan if Participant separated from service, or the date the Participant attains age fifty, if later; or
 3. any date provided in the Plan for distribution to Alternate Payee.
Form of Benefits
Alternate Payee shall have the right to elect to receive benefits from each respective Plan in any form permitted by suchPlan for the Participant, as of the date Alternate Payee elects to begin receiving benefits; provided, however, that an annuity payable to Alternate Payee shall be measured by Alternate Payee's CT Page 8945 life rather than by Participant's life, the form of payment that Alternate Payee elects must provide for distribution within the time limits imposed by section 401(a)(9) of the Internal Revenue Code and regulations thereunder, and Alternate Payee may not elect a joint and survivor annuity if the survivor annuitant is Alternate Payee's spouse.
Death Benefits
The death of Participant shall have no affect on the Alternate Payee's right to receive the amount set aside for her benefit nor shall it increase in any way the amount allocated to Alternate Payee's account. If Alternate Payee dies before beginning to receive benefits due to Alternate Payee under this order, the benefit awarded to Alternate Payee in this order shall be paid to the Alternate Payee's designated beneficiary, beginning on the earliest date on which benefits could begin to be paid to Alternate Payee under this order or sixty days following the beneficiary's notification to the Plan of Alternate Payee's death, if later. If Alternate Payee fails to designate a beneficiary, the balance in the Alternate Payee's account shall be payable to Alternate Payee's estate. If Alternate Payee fails to designate a form of payment, the death benefit shall be payable in a lump sum or, if lump sums are not authorized under the Plan, in the form of a life annuity to Alternate Payee's beneficiary. However, payments to Alternate Payee's beneficiary shall be subject to the restrictions provided in the paragraph above labeled "Form of Benefits."
If Alternate Payee dies after beginning to receive benefits from the Plan but before receiving all benefits due under this order, any benefits that are payable from the Plan on account of Alternate Payee's death shall be determined according to the form in which Alternate Payee was receiving benefits before Alternate Payee's death. Thus, if Alternate Payee dies while receiving benefits from a Plan under an annuity payable for life, benefits under the Plan will terminate on Alternate Payee's death. However, if Alternate Payee is receiving benefits under a joint and survivor annuity or for a specified term, any designated contingent annuitant or beneficiary shall continue to receive benefits in accordance with that form of payment after Alternate Payee's death.
Return to Work
CT Page 8946
If Participant returns to work after retirement and after Alternate Payee has begun to receive benefits under the Plan, Alternate Payee's benefits shall not be affected by Participant's return to work.
Separate Property
The benefits payable to Alternate Payee under this order shall be the separate property of Alternate Payee, and Participant is divested of all right, title, and interest in that property. The Plan benefits not assigned to Alternate Payee under this order shall be the separate property of Participant, and Alternate Payee is divested of all right, title, and interest in that property.
Application
This QDRO shall apply for the period required to pay out all benefits due Alternate Payee and, in the event of Alternate Payee's death, to Alternate Payee's beneficiary, under this order. This QDRO is not intended to require either Plan to provide any type or any form of benefit not otherwise provided under the Plan, or to require any payments at a time that is not provided by law or applicable rulings or regulations, or to require either Plan to provide for increased benefits (determined on the basis of actuarial value). This QDRO does not require either Plan to provide benefits to Alternate Payee that are required to be paid to another Alternate Payee under another order previously determined to be a qualified domestic relations order.
Document Determined Not to be a Qualified Domestics Order
If any Order submitted to the administrator of either Plan is held not to be a Qualified Domestic Relations Order within the meaning of IRC Section 414(p), the parties request a court of competent jurisdiction to modify the Order to make it a Qualified Domestic Relations Order that reflects the parties' intent, said modification order to be entered nunc pro tunc, if appropriate. A certified copy of this Order shall be sent to the Plan Administrator.
 Employee Benefits Committee Tyler Cooper Alcorn, LLP 205 Church Street CT Page 8947 New Haven, CT 06510
SO STIPULATED:
Irving S. Schloss Christine S. Schloss Participant Alternate Payee Dated: 4/23/99 Dated: 6/18/99
APPROVED AS TO FORM:
Michael A. Meyers Robert J. Engelman Attorney for Participant Attorney for Alternate Payee
Dated this day of , 1999.
BY THE COURT
Axelrod, Judge